[Cite as *In re Seizure of Approximately $20,000 U.S. Currency*, 2017-Ohio-1452.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104850**

## IN RE: SEIZURE OF APPROXIMATELY $20,000 U.S. CURRENCY

[Appeal by the State of Ohio]

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-607434-A

**BEFORE:** Jones, J., Blackmon, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** April 20, 2017

**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Daniel T. Van
       Andrew J. Santoli
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE**

Paul F. Adamson
Burdon and Merlitti
137 South Main Street, Suite 201
Akron, Ohio 44308

LARRY A. JONES, SR., J.:

{¶1} In this appeal, the state of Ohio contends that the trial court erred in granting the motion of petitioner, Ricardo Fletcher, for the return of seized funds. For the reasons that follow, we affirm.

{¶2} The record before us demonstrates the following. In November 2015, Nicholas Rowe, a.k.a. Joshua Luckey ("Rowe"), was found dead, buried in the backyard of a vacant Cleveland home with approximately 20 pounds of concrete covering him. Ricardo Fletcher knew Rowe, who lived in California, but would frequently travel to the Cleveland area, where it was believed he would engage in drug transactions with Fletcher.[1]

{¶3} According to Fletcher's counsel, in November 2015, Fletcher owed Rowe approximately $8,500, so Fletcher met Rowe and paid him. A day or two later, Fletcher was contacted by friends and family of Rowe's from California who told him that Rowe's whereabouts were unknown. Fletcher learned from a tracking device where Rowe's phone was, and went to that location; that was on November 19, 2015. Fletcher found a car with its windows broken and saw blood in the vehicle; he called the police to the scene. The police arrived and retrieved the cell phone that had been in the car. Fletcher returned home to his apartment and gathered valuables, including his "life

---

[1] A hearing was held on Fletcher's motion. No witnesses were presented, but counsel made arguments to the court. Fletcher's counsel indicated that it was his understanding that Fletcher gave a statement to the police, in which he indicated that he knew Rowe and he and Rowe had previously been involved in "illicit activities."

savings" that consisted of approximately $20,000 in cash, to have with him.   According to counsel, he did so because he was uncomfortable and uncertain about what had happened to Rowe.

{¶4} Fletcher returned to the scene the following day, November 20.   He saw a woman there, whom he had encountered the day before, and talked to her.   While the two were talking, they saw a gun.   Fletcher called the police to the scene again.   The police arrived, and after talking to Fletcher, they asked him for permission to search his car.   Fletcher consented, and during the search the police recovered and seized the approximate $20,000 in cash, among other items.   Fletcher also provided a DNA sample to the police.

{¶5} No indictment or charges of any nature were filed against Fletcher.   Neither were any forfeiture proceedings, civil or criminal, initiated against him.   In June 2016, Fletcher filed a motion seeking return of the seized funds.   He claimed that he was the lawful owner of the money and that the seizure of it was unlawful.   The state opposed Fletcher's motion, contending that the funds were being held as part of an ongoing investigation.

{¶6} The state maintained that because of the nature of Fletcher and Rowe's relationship, Fletcher could in "no way, shape, or form" contend that he was the lawful owner of the money.   According to the state, through Fletcher's "own words," the money was "drug proceeds" from either a sale he completed with Rowe or proceeds Fletcher "took" from Rowe "either in the time before his death or immediately after his

death."

{¶7} The consent to search form signed by Fletcher and the search inventory sheet were stipulated to by Fletcher and admitted into evidence. After the hearing, the trial court granted Fletcher's motion and ordered that the funds be released to him. This appeal by the state follows.

{¶8} R.C. 2981.03, the statute under which Fletcher's motion for return of the seized property was based, provides in relevant part as follows:

> (4)   A person aggrieved by an alleged unlawful seizure of property may seek relief from the seizure by filing a motion in the appropriate court that shows the person's interest in the property, states why the seizure was unlawful, and requests the property's return.  If the motion is filed before an indictment, information, or a complaint seeking forfeiture of the property is filed, the court shall schedule a hearing on the motion not later than twenty-one days after it is filed.  * * *  At the hearing, if the property seized is titled or registered under law, the state or political subdivision shall demonstrate by a preponderance of the evidence that the seizure was lawful and that the person is not entitled to the property.  If the property seized is not titled or registered under law, the person shall demonstrate by a preponderance of the evidence that the seizure was unlawful and that the person is entitled to the property.

R.C. 2981.03(A)(4).

{¶9} The property at issue here, money, was not titled or registered under law and, therefore, it was Fletcher's burden to demonstrate by a preponderance of the evidence that the seizure of it was unlawful and he was entitled to it.  "Preponderance of the evidence simply means 'evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it.'" *In re Starks*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, ¶ 15, quoting *Black's Law Dictionary* 1182 (6th Ed.1998).

{¶10} As discussed, at the hearing, Fletcher's counsel represented that the money was Fletcher's and that he had it in his car because it was his life savings and, based on concern about Rowe, he took the money, and other valuable items, out of his apartment. Counsel recounted to the court Fletcher's cooperation with the police, which included twice calling them, consenting to their search of his vehicle,[2] and supplying them with a DNA sample.

{¶11} Further, Fletcher's counsel argued that the state was time barred from retaining the money under R.C. 2981.03(F). That section provides in relevant part as follows:

A prosecutor may file a forfeiture action under section 2981.04 or 2981.05 of the Revised Code, or both. If property is seized pursuant to this section and a criminal forfeiture has not begun under section 2981.04 of the Revised Code, the prosecutor of the county in which the seizure occurred shall commence a civil action to forfeit that property under section 2981.05 of the Revised Code.

If the property seized includes property alleged to be a mobile instrumentality or includes personal, business, or governmental records, the civil forfeiture action shall be brought within thirty days of seizure. Otherwise, the action shall be brought within sixty days of seizure. In either case, the period within which the action shall be brought may be extended by agreement of the parties or by the court for good cause shown.

{¶12} The record here establishes that neither civil nor criminal forfeiture proceedings were ever commenced. At the time of the hearing in August 2016, well over 60 days had passed since the money was seized in November 2015.

{¶13} The state contends that it has a right to the funds notwithstanding R.C.

---

[2]Fletcher's consent was to search the vehicle; he did not consent to a seizure of the money.

2981.03(F) because the funds are part of an ongoing investigation and Fletcher is a "person of interest" in its investigation. R.C. 2981.11(A) provides for the retention of seized property in ongoing matters, stating that "any property that has been * * * lawfully seized * * * and that is in the custody of a law enforcement agency shall be kept safely by the agency, pending the time it no longer is needed as evidence or for another lawful purpose * * *." The state cites two cases in support of its position that it should retain the money here because of an ongoing investigation: *State v. Rivera*, 6th Dist. Lucas No. L-13-1170, 2014-Ohio-742 and *State v. Bates*, 6th Dist. Williams No. WM-11-007, 2012-Ohio-1397. We find both cases distinguishable from this case.

{¶14} In *Rivera*, the defendant was arrested for sexually oriented crimes and a video camera, "palmcorder," Polaroid camera, tapes, and other related photographic and taping accessories were seized from him. After the defendant's conviction, which was entered after his *Alford* plea, he challenged his conviction and sentence via several postconviction petitions, a direct appeal, and a delayed appeal. His conviction was upheld throughout. The defendant also sought to have the seized property returned to him. The state opposed his request, contending that the materials might be needed in a future retrial of the defendant's case and the materials contained evidence that the defendant performed sexual acts on minor children.

{¶15} The trial court in *Rivera* found that because the defendant "continues to challenge the validity of his convictions, there is a possibility that the seized property might need to be used as evidence in future retrial," and denied his motion. *Id.* at ¶ 7.

The Sixth Appellate Court upheld the trial court, finding no abuse of discretion in its decision not to return the property to the defendant.  The appellate court noted that, because the defendant entered an *Alford* plea, and the

> evidence held by the state was not entered into the record and [the defendant] has repeatedly challenged his conviction and sentence, there remains a possibility the evidence would be needed if the case was ever reversed and remanded for retrial.

*Id.* at ¶ 9.

{¶16} In *Bates*, the defendant was charged with numerous counts related to his fraudulent misrepresentation of his identity and menacing behavior toward his victims, and a laptop computer was seized from him.  The state dismissed the indictment, however, stating that the "matter will be presented to a future Grand Jury for consideration of a new indictment."  *Id.* at ¶ 4.  Approximately four months after the state had dismissed the indictment, the defendant sought the return of his laptop computer.  The trial court denied his request.

{¶17} In affirming the trial court's decision not to return the defendant's computer, the Sixth Appellate District noted that there was "ample documentation in the record that it was the state's intent to resubmit [the defendant's] case to the grand jury," and held that "[l]ogically, items being held as part of a criminal investigation are being held to be used as evidence or for the lawful purpose of assisting the investigation."  *Id.* at ¶ 12, 15.

{¶18} *Rivera* and *Bates* are distinguishable from this case in that they both concerned evidence that was being held in situations where the record established more than a remote possibility of further litigation in which the evidence would be needed.

Here, however, the state only made a bare assertion that the investigation was ongoing and that Fletcher was a person of interest, without presenting any evidence of a current ongoing investigation regarding the homicide and Fletcher.[3]  We are not persuaded by the state's bare assertion that it was totally implausible that Fletcher would legally have $20,000, and there is no requirement under Ohio law that required Fletcher to prove that the funds were his "life savings."

{¶19} On this record, the trial court properly granted Fletcher's motion for the return of the seized funds.

{¶20} Judgment affirmed.

It is ordered that appellant bear the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

PATRICIA ANN BLACKMON, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR

---

[3]We note that the record establishes that the investigating detective was present at the hearing, but did not testify as to what the ongoing investigation entailed.